

# THE ATTORNEY GENERAL
## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN, TEXAS

October 11, 1949

Hon. L. A. Woods
State Superintendent
Department of Education
Austin, Texas

Opinion No. V-933.

Re: Enumerating in the
    school census those
    non-resident scholas-
    tics whose transfer
    has not been approved
    by the State Commis-
    sioner of Education.

Dear Sir:

        We refer to your opinion request wherein you state, in substance:

        Paragraph 2 of Article III, Senate Bill 116, 51st Legislature, reads:

        "Provided that the attendance of non-
    resident scholastics whose grades are taught
    in their home districts shall not count to-
    wards teacher eligibility, unless the trans-
    fer of such scholastics has been approved by
    the County School Board and the State Commis-
    sioner of Education."

        Many counties have reported to the School Census Director of the State Department of Education transfers of scholastics whose grades are taught in their home district. Such transfers bear the approval of the County School Board.

        There are many transfers that were approved by the County Boards but then disapproved by the State Commissioner of Education.

        Does that disapproval remove the child from the transfer report and leave the per capita apportionment in the home (sending) district? If not, will the name remain on the transfer report and the per capita be paid to the receiving district? We do not know whether to leave the per capita money in the sending district or credit it to the receiving district.

        Articles 2696 and 2697 of Vernon's Civil Statutes

set out in detail the procedure to be followed in effecting the transfer of children from one district to another. These statutes also provide that if any district is dissatisfied with any transfer made by the County Superintendent it may appeal from such action to the County Board of Trustees who shall have the right to cancel the transfer. Article 2696 also provides:

> ". . . Upon the certification of the transfer of any child, from one district to another district, by the county superintendent of the county in which the child resides at the time of the transfer, the State Department of Education shall authorize the State Treasurer to pay over directly the per capita apportionment, in independent districts of five hundred (500) or more scholastic population, to the district to which such child is transferred; and in all other districts, to county superintendents, to be paid by him to the respective districts to which such children are transferred; provided, no transfer shall be made after August 1st."

Under the law governing distribution of the available school fund, the per capita apportionment is distributed to the district in which the scholastic is enumerated, usually his home district. Texas Constitution, Art.VII, Secs.5 and 7; Arts.2665, 2692, V.C.S. The statutes provide for the transfer of scholastics in the instances enumerated and in the manner provided. Arts.2696-2699; S.B.116, Art.III, par.3, Acts 51st Leg., 1949. Where a scholastic is transferred in the manner prescribed by law, the per capita apportionment follows him to the district to which he is transferred. Excepting the instances when the scholastic is legally transferred, the per capita apportionment for that scholastic is payable only to the district wherein he is enumerated. Art.2699; Love v. City of Dallas, 120 Tex.351, 40 S.W.2d 20 (1931); McCorkle v. Trustees of Robinson Springs School District No.76, of Comanche County, 121 S.W.2d 1048 (Tex. Civ.App.1938).

Senate Bill 116, however, provides State aid to finance the minimum program established by that Bill, in addition to those State moneys payable to districts out of the State Available Fund. Article III thereof is the law governing the matter of teacher eligibility for

purposes of the minimum foundation program. It sets out
the formula by which any school district may determine
the amount of minimum foundation funds it may expect to
receive.

Paragraph 2 of Article III provides that non-
resident scholastics whose grades are taught in their
home district shall not count toward teacher eligibil-
ity, unless their transfer has been approved by the Coun-
ty School Board and the State Commissioner of Education.
Under that paragraph scholastics, school districts, and
county boards are clearly apprised of the consequences
where transfers approved by the county board do not re-
ceive the subsequent approval of the State Commissioner.
Under Article 2696 school districts have been afforded
the opportunity to voice their dissatisfaction with any
transfer made by the County Superintendent and the right
to appeal to the County School Board.

The effect of paragraph 2 of Article III (con-
sidered with subd.b,Sec.2, and Sec.1 of Art.V of S.B.116)
is that no State aid will be granted out of minimum foun-
dation funds for the educational costs of non-resident
scholastics, whose grades are taught in their home dis-
tricts, unless their transfer has been properly approv-
ed by the County School Board and the State Commissioner.
The purposes of these provisions are to encourage atten-
dance of scholastics in their home districts when their
grades are taught therein and to economize on transporta-
tion costs authorized in the foundation program.

Thus, Article 2696 and Article III paragraph 2
deal with distinct and separate subjects. Article 2696
concerns legal (parental) transfers and places the juris-
diction over the same in county boards and officers. It
governs in the distribution of State Available Funds for
children transferred by virtue of the statute. Paragraph
2 of Article III concerns teacher eligibility of school
districts under the Gilmer-Aikin laws, and applies to
eligibility for the minimum foundation school funds. Se-
nate Bill 116 contains no provision governing the matter
of distribution of State Available Funds where legal trans-
fers are consummated under Article 2696. In short, we do
not think it the intention of Senate Bill 116 to take con-
trol and discretion in matters of scholastic transfers out
of the local county school boards and place it in the hands
of the State Commissioner of Education in all instances.

Accordingly, it is our opinion, that if the

State Commissioner of Education, acting Under Article III, paragraph 2, refuses to approve (for teacher eligibility purposes) transfer of a scholastic (whose grades are taught in his home district) to another district, such refusal would have no effect on the right of the receiving district to realize the per capita apportionment on that legal transfer, as provided in Article 2696. The name of the legal transfer should remain on the transfer report, and the per capita be paid to the receiving district.

## SUMMARY

Per capita apportionment on legal transfers of public school students consummated under Article 2696, V.C.S., is governed by that article, and is not affected by any ruling of the State Commissioner of Education made under Senate Bill 116, Article III, paragraph 2, Acts 51st Legislature 1949, concerning the transfer.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

CEO:bh:mw

By *Chester E. Ollison*

Chester E. Ollison
Assistant

APPROVED

*Joe R. Greenhill*

FIRST ASSISTANT
ATTORNEY GENERAL